FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

FILED
JUN - 6 2011
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

In re:

DORIS JEAN JACKSON,

       Debtor.

Case No. 11-20156-B-7

DCN No.  CJH-1

MEMORANDUM DECISION ON
MOTION FOR RELIEF FROM THE AUTOMATIC STAY

Christopher J. Hoo, Randall S. Miller & Associate, PC, Sherman Oaks, Californa, for OneWest Bank, FSB, movant

Peter G. Macaluso, Law Offices of Peter G. Macaluso, Sacramento, California, for Doris Jean Jackson, debtor

THOMAS C. HOLMAN, Bankruptcy Judge:

A typical assignment of a promissory note secured by a mortgage or deed of trust on real property does not, by itself, confer on the assignee standing to enforce the note and deed of trust in federal court.

## I. Factual Background

Before the court is the motion (Dkt. 15) of "OneWest Bank, FSB, its successors and/or assigns, as purchaser of certain assets of First Federal Bank of California from the Federal Deposit Insurance Corporation, as Receiver" ("OneWest") for relief from the automatic stay (the "Motion"). The Motion does not recite what OneWest wants to do that requires relief from the automatic stay, but the court treats the Motion as requesting relief from the automatic stay to commence and complete foreclosure proceedings under the Deed of Trust and Assignment of Rents (Dkt. 20) (the "Deed of Trust") that secures a Note Secured By Deed of Trust (Dkt. 21) (the "Note") made by the debtor in favor of First Federal Bank of California, FSB, and subsequently assigned to OneWest by a Corporate Assignment of Deed of Trust (Dkt. 18) (the "Assignment").

This chapter 7 bankruptcy case was commenced by the filing of the debtor's voluntary petition on January 3, 2011. The Motion was filed April 14, 2011. The Motion recites, *inter alia*,

that OneWest is "the holder of a mortgage" (Dkt. 21 at 1) on the debtor's residence (the "Property"), that as of April 7, 2011, "the mortgage was delinquent" from February 1, 2011, that as of April 7, 2011, the total debt owed to OneWest was approximately $111,425.81 and that according to the debtor's schedules the value of the Property is $112,000.00 (Dkt. 21 at 2). The prayer of the Motion requests relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1) and nullification of the 14-day stay provided in F. R. Bankr. P. 4001(a)(3).

The debtor filed written opposition on May 10, 2011 (Dkt. 25). In her opposition, the debtor asserts that OneWest does not have standing to file the Motion, and requests sanctions pursuant to Fed. R. Bankr. P. 9011, 28 U.S.C. § 1927, and the court's inherent authority.

On May 23, 2011, the court posted on the court's website a tentative ruling setting forth the substance of this memorandum. The Motion came on for hearing on May 24, 2011. Neither OneWest nor the debtor appeared at the hearing. Dkt. 29. The court made the following ruling: The debtor's opposition is sustained in part. The motion is dismissed. The debtor's countermotion for sanctions is denied. Memorandum Decision to follow. (Dkt. 30).

II. Discussion

"Under the Bankruptcy Code, a party seeking relief from stay must establish entitlement to that relief[,] . . . [f]oreclosure

agents and servicers do not automatically have standing." *In re Jacobson*, 402 B.R. 359, 367 (Bankr. W.D. Wash. 2009) (citing *In re Hayes*, 393 B.R. 259, 266-67 (Bankr. D. Mass. 2008); *In re Scott*, 376 B.R. 285, 290 (Bankr. D. Idaho 2007). "For a federal court to have jurisdiction, the litigant must have constitutional standing, which requires an injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *In re Jacobson*, 402 B.R. 359, 366 (Bankr. W.D. Wash. 2009)(citing *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 551 (1996)). Constitutional standing, which is based on the "case or controversy" requirement under Article III, § 2 of the U.S. Constitution, cannot be waived as it is "a threshold jurisdictional requirement." See *id.* at 367(citing *Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 899-00 (9th Cir. 2000)). The United States Supreme Court recently held that in order to meet this jurisdictional requirement, an assignee of a claim must hold legal title to the claim being asserted. *Sprint Commc'ns Co. v. APCC Services, Inc.*, 554 U.S. 269, 128 S. Ct. 2531, 171 L.Ed.2d 424 (2008). An assignment for collection will suffice for purposes of satisfying the constitutional standing requirement. *Id.* at 2542.

Any expectation that the legal owner always has the right to enforce a claim evidenced by a promissory note is misplaced when the promissory note is a negotiable instrument.

> The right to enforce an instrument and ownership of the instrument are two different concepts . . . . Ownership rights in instruments may be determined by principles of the law of property, independent of Article 3 . . . . Moreover, a person who has an ownership right in an instrument might not be a person entitled to enforce the instrument . . . .
>
> An instrument is a reified right to payment. The right is represented by the instrument itself.

Cal. Comm. Code § 3203, Uniform Commercial Code Comment 1 (West, Westlaw through Ch. 24 of 2011 Reg. Sess. and Ch. 2 of 2011-2012 1st Ex.Sess.).

The concept of standing involves more than constitutional standing. It involves two inquiries. *See Franchise Tax Bd. v. Alcan Aluminum*, 493 U.S. 331, 335, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990) ("We have treated standing as consisting of two related components: the constitutional requirements of Article III and nonconstitutional prudential considerations."); *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975). In the first, as set forth above, the court must ask whether the plaintiff or moving party has suffered sufficient injury to satisfy the "case or controversy" requirement of Article III. A suit brought by a plaintiff or relief sought by a moving party without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter

jurisdiction over the suit. *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101-04 (1998). In that event, the suit should be dismissed under Federal Rule of Civil Procedure 12(b)(1). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir.2003); *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir.2002).

Beyond this "irreducible constitutional minimum of standing," the court must engage in a second inquiry to determine whether the plaintiff or moving party is properly able to assert a particular claim. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Franchise Tax Bd. v. Alcan Aluminum*, 493 U.S. 331, 335, 110 S.Ct. 661, 107 L.Ed.2d 696 (1990); *Dunmore v. U.S.*, 358 F.3d 1107, 1112 (9th Cir. 2004). Frequently, this inquiry requires an analysis of whether a statute under which the plaintiff or moving party asserts a claim has conferred "standing" on the plaintiff or moving party. In such cases, non-constitutional or "prudential" standing exists when "a particular plaintiff has been granted a right to sue by the specific statute under which he or she brings suit." *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1199 (9th Cir.2004); *see also Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-75, 102 S.Ct. 752, 760, 70 L.Ed.2d 700 (1982)(discussing other "prudential principles" such as refraining from adjudicating "generalized grievances," and requiring the complaint to fall within "the zone of interests to be protected

or regulated"). In other instances, a statute or rule of law may restrict the assertion of a claim to a certain universe of parties. This restriction includes the requirement of Federal Rule of Civil Procedure 17(a)(1) that "an action must be prosecuted in the name of the real party in interest." *See In re Wilhelm*, 407 B.R. 392, 398 (Bankr. D. Idaho 2009)(stating that the requirement of Rule 17 "generally falls within the prudential standing doctrine.") The restriction may also be based on state law. *See Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004)(non-custodial parent who is barred under state law from suing as his or her child's "next friend" lacks prudential standing to bring a First Amendment challenge to a school board's policy requiring teacher-led recitation of the Pledge of Allegiance); 15 James Wm. Moore, et al., MOORE'S FEDERAL PRACTICE - CIVIL § 101.51[1][e](3d ed. 2011)("State laws may operate to deprive a prospective plaintiff of prudential standing in federal court."). Generally, a party without legal rights to enforce an obligation under applicable substantive law lacks prudential standing. *Doran v. 7-Eleven, Inc.*, 524 F.3d. 1034, 1044 (9th Cir. 2008). If a party has suffered sufficient injury to satisfy the jurisdictional standing requirement of Article III, but the party cannot satisfy the applicable prudential standing requirement(s), the party cannot state a claim upon which relief can be granted. *Guerrero v. Gates*, 357 F.3d 911, 920-21 (9th Cir.2003), In that event, the claim for relief should be dismissed under Federal Rule of Civil

Procedure 12(b)(6). *Id.* at 920-21.

The *Sprint* case, cited above, involved constitutional standing as applied to causes of action. As discussed above, constitutional standing is only the first step in the standing analysis. In the context of this motion for relief from automatic stay, the court must also determine whether the movant has prudential standing by determining whether under applicable substantive law the movant has a legal right to enforce the obligation on which its claim is based.

Where a negotiable instrument represents the obligation to be enforced, as here, the issue whether the movant has a legal right to enforce the obligation, and, thus, whether the movant has prudential standing, is determined by the Commercial Code. According to a recent draft report by the Permanent Editorial Board for the Uniform Commercial Code,

> [I]n the context of notes that have been sold or used as collateral to secure an obligation, the central concept for making that determination is identification of the 'person entitled to enforce' the note. Several issues are resolved by that determination. Most particularly:
>
> (i) the maker's obligation on the note is to pay the amount of the note to *the person entitled to enforce the note,*
>
> (ii) the maker's payment to *the person entitled to enforce*

-8-

*the note* results in discharge of the maker's obligation, and

(iii) the maker's failure to pay, when due, the amount of the note to *the person entitled to enforce the note* constitutes dishonor of the note.

. . . .

UCC Section 3-301 provides only three ways in which a person may qualify as the person entitled to enforce a note, two of which require the person to be in possession of the note (which, for this purpose, may include possession by a third party such as an agent):

[1.] The first way that a person may qualify as the person entitled to enforce a note is to be its "holder."  This familiar concept, set out in detail in UCC Section 1-201(b)(21)(A), requires that the person be in possession of the note and either (i) the note is payable to that person or (ii) the note is payable to bearer.  Determining to whom a note is payable requires examination not only of the face of the note but also of any indorsements. This is because the party to whom a note is payable may be changed by indorsement so that, for example, a note payable to the order of a named payee that is indorsed in blank by that payee

becomes payable to bearer.

[2.] The second way that a person may be the person entitled to enforce a note is to be a "nonholder in possession of the [note] who has the rights of a holder."

> [a.] How can a person who is not the holder of a note have the rights of a holder? This can occur by operation of law outside the UCC, such as the law of subrogation or estate administration, by which one person is the successor to or acquires another person's rights. It can also occur if the delivery of the note to that person constitutes a 'transfer' (as that term is defined in UCC Article 3, see below) because transfer of a note "vests in the transferee any right of the transferor to enforce the instrument." Thus, if a holder (who, as seen above, is a person entitled to enforce a note) transfers the note to another person, that other person (the transferee) obtains from the holder the right to enforce the note even if the transferee does not become the holder (as in the example below). Similarly, a subsequent transfer will result in the subsequent transferee being a person entitled to enforce the note.

[b.] Under what circumstances does delivery of a note qualify as a transfer? As stated in UCC Section 3-203(a), a note is transferred "when it is delivered by a person other than its issuer for the purpose of giving to the person receiving delivery the right to enforce the instrument." For example, assume that the payee of a note sells it to an assignee, intending to transfer all of the payee's rights to the note, but delivers the note to the assignee without indorsing it. The assignee will not qualify as a holder (because the note is still payable to the payee) but, because the transaction between the payee and the assignee qualifies as a transfer, the assignee now has all of the payee's rights to enforce the note and thereby qualifies as the person entitled to enforce it. Thus, the failure to obtain the indorsement of the payee does not prevent a person in possession of the note from being the person entitled to enforce it, but demonstrating that status is more difficult. This is because the person in possession of the note must also demonstrate the purpose of the delivery of the note to it in order to qualify as the person entitled to enforce.

Case 11-20156    Filed 06/06/11    Doc 33

Case 11-20156    Filed 06/06/11    Doc 33

[3.] There is a third method of qualifying as a person entitled to enforce a note that, unlike the previous two methods, does not require possession of the note. This method is quite limited - it applies only in cases in which "the person cannot reasonably obtain possession of the instrument because the instrument was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process." In such a case, a person qualifies as a person entitled to enforce the note if the person demonstrates not only that one of those circumstances is present but also demonstrates that the person was formerly in possession of the note and entitled to enforce it when the loss of possession occurred and that the loss of possession was not as a result of transfer (as defined above) or lawful seizure. If the person proves those facts, as well as the terms of the note, the person may enforce the note, but the court may not enter judgment in favor of the person unless the court finds that the maker is adequately protected against loss that might occur because if the note subsequently reappears.

PERMANENT EDITORIAL BOARD FOR THE UNIFORM COMMERCIAL CODE, DRAFT REPORT OF THE

PEB ON THE UCC RULES APPLICABLE TO THE ASSIGNMENT OF MORTGAGE NOTES AND TO THE OWNERSHIP AND ENFORCEMENT OF THOSE NOTES AND THE MORTGAGE SECURING THEM, 3-6 (March 29, 2011) (http://extranet.ali.org/directory/files/PEB_ Report_ on_Mortgage_Notes-Circulation_Draft.pdf) (footnotes omitted).

OneWest submitted the Note and Deed of Trust as evidence in support of the Motion (Dkts. 20 and 21). OneWest also submitted the Assignment in support of the Motion.

The court finds that the Assignment is sufficient to show that OneWest is the owner of the Note and has constitutional standing to bring the motion. The Assignment "does convey, grant, sell, assign, transfer and set over the described Deed of Trust together with the certain note(s) described therein...together with all right, title and interest secured thereby, all liens, and any rights due or to become due thereon to OneWest Bank, FSB..."

However, the court finds that the record before the court fails to demonstrate that OneWest is the "person entitled to enforce" the note under the Commercial Code, and the court therefore concludes that OneWest has not shown that it has prudential standing to bring the Motion.

The court finds that OneWest has not shown that it is the "holder" of the Note [the first alternative above] because: (1) there is no evidence in the record that the Note has been indorsed to OneWest or to bearer; and (2) there is no evidence in the record that OneWest is in possession of the Note. The court

finds that OneWest has not shown that it is a "nonholder in possession of the note who has the rights of a holder" [the second alternative above] because there is no evidence in the record that OneWest is in possession of the Note.  The court finds that OneWest has not shown that it is a "nonholder not in possession of the note who has the rights of a holder" [the third alternative above] because there is no evidence in the record that OneWest cannot reasonably obtain possession of the Note because the Note was destroyed, its whereabouts cannot be determined, or it is in the wrongful possession of an unknown person or a person that cannot be found or is not amenable to service of process.

As to the debtor's countermotion for sanctions, although this request was made on less than twenty-eight days' notice and should be construed as a motion filed pursuant to Local Bankruptcy Rule 9014-1(f)(2), the motion cannot be granted. Pursuant to Federal Rule of Bankruptcy Procedure. 9011(c)(1)(A), "[a] motion for sanctions under this rule shall be made separately from other motions or requests[.] . . ."  The debtor failed to comply with this requirement.  Pursuant to Federal Rule of Bankruptcy Procedure 9011(c)(1)(A), a motion for sanctions "may not be filed with or presented to the court unless, within [twenty-one] days after service of the motion . . . the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected[.] . . ."  The debtor has failed to comply with this requirement.  The

countermotion for sanctions was filed on May 10, 2011 (Dkt. 25), providing the creditor with only fourteen (14), instead of twenty-one (21), days to withdraw or amend their motion for relief from the automatic stay. The requests for sanctions under 28 U.S.C. § 1927 and the court's inherent authority are not granted because the debtor refers to inherent authority only in the title of section 2 of the opposition and countermotion and refers to 28 U.S.C. § 1927 only by stating that OneWest's "inaccurate representations . . . may warrant sanctions under 28 U.S.C. § 1927." The debtor provides no other authority or analysis to support these requests. With respect to 28 U.S.C. § 1927, the debtor has failed to address *Perroton v. Gray (In re Perroton)*, 958 F.2d 889 (9th Cir. 1992), which holds that a bankruptcy court is not a "court of the United States" as defined in 28 U.S.C. § 451.

Dated: June 6, 2011

UNITED STATES BANKRUPTCY JUDGE